UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

RONNIE SLEDGE,

                Plaintiff,

          -v.-                             9:04-CV-1311
                                                   (TJM/GHL)

DOCTOR KOOI,

                Defendant.
_____

APPEARANCES:                                 OF COUNSEL:

RONNIE SLEDGE, 92-B-1558
  Plaintiff, *Pro Se*
Auburn Correctional Facility
135 State Street
P.O. Box 618
Auburn, NY 13024-9000

HON. ANDREW M. CUOMO                ED J. THOMPSON, ESQ.
Attorney General of the State of New York    Assistant Attorney General
  Counsel for Defendant
615 Erie Boulevard West, Suite 102
Syracuse, NY 13204

GEORGE H. LOWE, United States Magistrate Judge

### REPORT-RECOMMENDATION

      This matter has been referred to me for Report and Recommendation by the Honorable

Thomas J. McAvoy, Senior United States District Judge, pursuant to 28 U.S.C. § 636(b) and

Local Rule N.D.N.Y. 72.3(c).  In this *pro se* civil rights action brought under 42 U.S.C. § 1983,

Ronnie Sledge ("Plaintiff") alleges that Pang L. Kooi, M.D. ("Defendant") violated Plaintiff's

rights under the First, Eighth and Fourteenth Amendments while Plaintiff was incarcerated at

Auburn Correctional Facility ("Auburn C.F.") in 2003 and 2004.  (Dkt. No. 15 [Plf.'s Second

Am. Compl.].)  Currently before the Court is Defendant's motion for summary judgment.  (Dkt.

No. 28.)  For the reasons set forth below, I recommend that Defendant's motion be granted.

## I.     BACKGROUND

### A.     Plaintiff's Second Amended Complaint

Generally, Plaintiff's Second Amended Complaint alleges as follows.

Between November 6, 2003 (when Plaintiff was first seen by Defendant) and April 28,

2004 (when Plaintiff was assigned to another physician at Auburn C.F.), Defendant violated

Plaintiff's constitutional rights in the following **three** ways: **(1)** Defendant violated Plaintiff's

**Eighth Amendment** rights by being deliberately indifferent to several of Plaintiff's medical

conditions (primarily eczema, "chronic lower back pain," "stomach discomfort," "acid

reflux/heartburn," and "allergy [and] asthma symptoms"); **(2)** Defendant violated Plaintiff's **First**

**Amendment** rights by retaliating against Plaintiff for having filed a grievance against Defendant

in March of 2004; and **(3)** Defendant violated Plaintiff's **Fourteenth Amendment** due process

rights by denying him "the right to properly address all his medical concerns."  (*See generally*

Dkt. No. 15 [Plf.'s Second Am. Compl.].)

More specifically, Plaintiff's **Eighth Amendment** claim asserts that Defendant (1) failed

to write various prescriptions for Plaintiff, as he had promised he would do, or failed to ensure

that Plaintiff's prescribed medications or supplies were in fact delivered to Plaintiff, for a period

of nearly six months (i.e., between November 6, 2003, to April 28, 2004), and (2) Defendant

rendered various diagnoses with which Plaintiff strongly disagreed on March 15, 2004.  (Dkt.

No. 15, ¶¶ 7-18, 20-24 [Plf.'s Second Am. Compl.].)  Plaintiff acknowledges, however, that

during this general period of time he was seen by various medical care professionals (including

2

Defendant) on several occasions (e.g., on October 21, 2003, October 27, 2003, October 31, 2003, November 6, 2003, November 13, 2003, February 9, 2004, and March 15, 2004); Plaintiff also acknowledges that, during much or all of this time period, he was in possession of various medications for his referenced medical conditions, which medications were either left over from a previous prescription (e.g., Loratadine for "asthma/allergy symptoms," either "Naprosyn" or "Naproxen" for back pain, a "Ph cleanser" for a "skin condition") or were "illegally obtain[ed] [by Plaintiff] . . . from other inmates with similar medical problems."  (*Id*. at ¶¶ 3-14, 16, 18, 23.)

Plaintiff's **First Amendment** claim asserts that, on March 15, 2004, while he was attending a "call-out" conducted by Defendant in his office, Plaintiff stated that if Defendant continued to refuse to provide medical care to Plaintiff then Plaintiff was going to file a grievance against Defendant.  (*Id*. at ¶ 14.)  Plaintiff alleges that Defendant responded that, if Plaintiff filed a grievance against Defendant, then "Plaintiff would be placed in keep-lock status" because Defendant "was the boss and can do whatever he likes"; Defendant then directed Plaintiff to leave his office.  (*Id*.)  Plaintiff alleges that, on March 16, 2004, he filed a grievance against Defendant.  (*Id*. at ¶ 15.)  Plaintiff alleges that the way Defendant subsequently retaliated against Plaintiff for filing this grievance was "by not approving medications already approved [by another physician]."  (*Id*. at ¶ 24.)

Finally, Plaintiff's **Fourteenth Amendment** claim asserts that Defendant denied Plaintiff "the right to address his medical concerns."  (*Id*. at ¶¶ 3, 15, 20, 24.)  Although Plaintiff repeats this allegation several times, he provides no clear elaboration with regard to it.  (*Id*.)  Apparently, Plaintiff is claiming that he had a due process right to be heard by Defendant with regard to his (Plaintiff's) medical condition, but that Defendant would not listen to him.  (*Id*. at ¶ 13 [alleging

3

that "Dr. Kooi interrupted Plaintiff from further explaining his medical concerns and ordered Plaintiff to take his shirt off."], ¶ 15 [alleging that "the right to address his medical concerns . . . was being interrupted"].)

**B.      Defendant's Motion for Summary Judgment**

Defendant's motion for summary judgment is based on six grounds: (1) the Eleventh Amendment bars Plaintiff's claim against Defendant in his official capacity; (2) Plaintiff has failed to establish (or even state) a claim of retaliation under the First Amendment; (3) Plaintiff has failed to establish (or even state) a claim of retaliation under the Eighth Amendment; (4) Plaintiff has failed to establish (or even state) a claim of retaliation under the Fourteenth Amendment; (5) Plaintiff's claims should be dismissed because Defendant was not personally involved in the constitutional violations alleged; and (6) Plaintiff's claims should be dismissed because Defendant is protected by the doctrine of qualified immunity.  (Dkt. No. 28, Part 9, at 3-13 [Def.'s Mem. of Law.)

**II.      APPLICABLE LEGAL STANDARD**

**A.      Summary Judgment**

Under Fed. R. Civ. P. 56(c), summary judgment is warranted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In determining whether a genuine issue of material[1] fact exists, the Court must resolve all ambiguities and draw all

---

[1]      A fact is "material" only if it would have some effect on the outcome of the suit. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248 (1986).

4

reasonable inferences against the moving party.[2]

However, when the moving party has met its initial burden of establishing the absence of any genuine issue of material fact, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).[3]  The nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts."[4]  "A dispute regarding a material fact is *genuine* if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[5]

### B.    Revocation of Plaintiff's Special Status as *Pro Se* Civil Rights Litigant

Imposed over the aforementioned burden-shifting framework is the generous perspective with which the Court *generally* views a *pro se* civil rights plaintiff's papers.[6]  For example, where a civil rights plaintiff is proceeding *pro se*, and the defendant has filed a dispositive motion, *generally* the Court must construe the plaintiff's complaint and opposition papers

---

[2]        *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997) [citation omitted]; *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir. 1990) [citation omitted].

[3]        *See also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986).

[4]        *Matsushita,* 475 U.S. at 585-86; *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

[5]        *Ross v. McGinnis*, 00 Civ. 0275, 2004 WL 1125177, *8 (W.D.N.Y. March 29, 2004) [internal quotations omitted] [emphasis added].

[6]        *See Haines v. Kerner,* 404 U.S. 519, 520-21 (1972) (*per curiam* ) (*pro se* civil rights action); *Ortiz v. Cornetta*, 867 F.2d 146, 148 (2d Cir. 1989) (*pro se* civil rights action); *Aziz Zarif Shabazz v. Pico*, 994 F.Supp. 460,  467 (S.D.N.Y. 1998) (*pro se* civil rights action), *aff'd in part*, *vacated in part on other grounds*, 205 F.3d 1324 (2d Cir. 2000) (unpublished decision).

liberally so as to raise the strongest arguments that they suggest.[7]  Having said that, "[p]roceeding

pro se does not otherwise relieve a [party] from the usual requirements to survive a motion for

summary judgment."[8]

In addition, "there are circumstances where an overly litigious inmate, who is quite

familiar with the legal system and with pleading requirements, may not be afforded [the] special

solicitude" or status that is normally afforded *pro se* litigants.[9]  The rationale for this revocation

of special status (at least in the Second Circuit) is not that the *pro se* litigant should be punished

but that his excessive litigiousness demonstrates his *experience*, the lack of which is the reason

for conferring the special status upon *pro se* litigants in the first place.[10]  Moreover, permitting

---

[7]      *See Weixel v. Bd. of Ed. of City of New York,* 287 F.3d 138, 146 (2d Cir. 2002) (motion to dismiss in civil rights case); *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) (motion for summary judgment in civil rights case); *Thomas v. Irving,* 981 F. Supp. 794, 799 (W.D.N.Y. 1997) (motion for summary judgment in civil rights case).

[8]      *Bussa v. Aitalia Line Aeree Italiane S.p.A.*, 02-CV-10296, 2004 WL 1637014, at *4 (S.D.N.Y. July 21, 2004) [citations omitted], *accord*, *Durran v. Selsky*, 251 F. Supp. 2d 1208, 1211 (W.D.N.Y. 2003) [citations omitted].  For example, although "[t]he work product of *pro se* litigants should be generously and liberally construed, . . . [a *pro se* litigant's] failure to allege either specific facts or particular laws that have been violated renders [an] attempt to oppose defendants' motion ineffectual."  *Kadosh v. TRW, Inc.*, No. 91 Civ. 5080, 1994 WL 681763, at *5 (S.D.N.Y. Dec. 5, 1994).

[9]      *Smith v. Burge*, 03-CV-0955, 2006 WL 2805242, at *3 & n.3 (N.D.N.Y. Sept. 28, 2006) (Kahn, J., adopting report-recommendation of Lowe, M.J.) [citations omitted].

[10]     *See, e.g.*, *Johnson v. Eggersdorf*, 8 Fed. App'x 140, 143 (2d Cir. 2001) (unpublished opinion), *aff'g*, 97-CV-0938, Decision and Order (N.D.N.Y. filed May 28, 1999) (Kahn, J.), *adopting*, Report-Recommendation, at 1, n.1 (N.D.N.Y. filed Apr. 28, 1999) (Smith, M.J.); *Johnson v. C. Gummerson*, 201 F.3d 431, *2 (2d Cir. 1999) (unpublished opinion), *aff'g*, 97-CV-1727, Decision and Order (N.D.N.Y. filed June 11, 1999) (McAvoy, J.), *adopting*, Report-Recommendation (N.D.N.Y. filed April 28, 1999) (Smith, M.J.); *Davidson v. Flynn*, 32 F.3d 27, 31 (2d Cir. 1994); *Gill v. Pidylpchak*, 02-CV-1460, 2006 WL 3751340, at *2 (N.D.N.Y. Dec. 19, 2006) (Scullin, J., adopting report-recommendation of Treece, M.J.); *Saunders v. Ricks*, 03-CV-0598, 2006 WL 3051792, at *2 (N.D.N.Y. Oct. 18, 2006) (Hurd, M.J., adopting Report-

experienced *pro se* litigants to retain their special status (despite their litigation experience)

would tilt the scales of justice unfairly in favor of the *pro se* litigant and against his opponents.[11]

Courts relying on the "experience" rationale for revoking a *pro se* litigant's special status

look at a variety of factors in assessing whether or not the *pro se* litigant is experienced.  Most

often, these factors include (1) the number of previous federal court actions filed, (2) the number

of previous federal court appeals filed, (3) the number of previous state court actions filed, (4)

the number of previous state court appeals filed, and (5) the recency or simultaneity of the actions

and/or appeals.[12]  There is, of course, no formula for determining "How many is too many?"

_____

Recommendation of Lowe, M.J.); *Gill v. Frawley*, 02-CV-1380, 2006 WL 1742738, at *3 (N.D.N.Y. June 22, 2006) (McAvoy, J., adopting Report-Recommendation of Lowe, M.J.); *Davidson v. Talbot*, 01-CV-0473, 2005 U.S. Dist. LEXIS 39576, at *20 (N.D.N.Y. March 31, 2005) (Treece, M.J.), *adopted by* 2006 U.S. Dist. LEXIS 47554 (N.D.N.Y. July 5, 2006) (Scullin, J.); *Gill v. Riddick*, 03-CV-1456, 2005 U.S. Dist. LEXIS 5394, at *7 (N.D.N.Y. March 31, 2005) (Treece, M.J.); *Yip v. Bd. of Tr. of SUNY*, 03-CV-0959, 2004 WL 2202594, at *3 (W.D.N.Y. Sept. 29, 2004); *Davidson v. Dean*, 204 F.R.D. 251, 257 & n.5 (S.D.N.Y. 2001); *Santiago v. C.O. Campisi*, 91 F. Supp.2d 665, 670 (S.D.N.Y. 2000); *McGann v. U.S.*, 98-CV-2192, 1999 WL 173596, at *2 (S.D.N.Y. March 29, 1999); *Hussein v. Pitta*, 88-CV-2549, 1991 WL 221033, at *4 (S.D.N.Y. Oct. 11, 1991).

[11]   *See, e.g., Hussein*, 1991 WL 221033, at *4 (concluding that experienced *pro se* litigant should no longer be afforded special leniency because continuing to afford him such leniency would be unfair to "numerous attorneys," whose time and energy had already been consumed by plaintiff); *see also* Jessica Case, "Pro se Litigants at the Summary Judgment Stage: Is Ignorance of the Law an Excuse?" 90 *Ky. L.J.* 701, 735-740 (Spring 2001) (discussing how extending special leniency to *pro se* litigants in some circumstances "distorts the adversarial system and the role of trial judges") [citing cases]; Julie M. Bradlow, "Procedural Due Process Rights of *Pro se* Civil Litigants," 55 *U. Chi. L. Rev*. 659, 672 (Spring 1988) (discussing how "extending too much procedural leniency to a *pro* se litigant risks undermining the impartial role of the judge in the adversary system") [citations omitted].

[12]   *See, e.g., Eggersdorf*, 8 F. App'x at 143 (plaintiff at one point had twelve simultaneously pending lawsuits in Northern District alone); *Gummerson*, 201 F.3d at *2 (plaintiff at one point had twelve simultaneously pending lawsuits in Northern District alone); *Flynn*, 32 F.3d at 31 (plaintiff at one time had at least thirty simultaneously pending lawsuits); *Frawley*, 2006 WL 1742738, at *3 & n.2 (plaintiff had filed at least twenty actions in current

*Generally*, if a *pro se* litigant has filed a dozen or more actions and/or appeals before the date of the decision in question, it is quite possible that he will be deemed to be "experienced."[13] Granted, there are some cases revoking the special status of a *pro se* litigant who has filed *fewer* than a dozen cases.[14] However, there appear to be *more* cases refusing to revoke the special status of a *pro se* litigant who has filed fewer than a dozen cases.[15] One reason for this array of

_____

court and five other actions in Southern District of New York); *Talbot*, 2005 U.S. Dist. LEXIS 39576, at *18-20 & n.10 (plaintiff had filed twenty lawsuits in Northern District alone); *Riddick*, 2005 U.S. Dist. LEXIS 5394, at *7 & n.3 (plaintiff had filed twenty lawsuits in Northern District alone); *Dean*, 204 F.R.D. at 257 (plaintiff at one point had thirty simultaneous pending suits); *Santiago*, 91 F. Supp. 2d at 670 (plaintiff had ten suits pending in district); *McGann*, 1999 WL 173596, at *2, 8-10 (court found seventy-nine reported decisions of cases that plaintiff filed during previous forty-three years); *McClellan*, 1996 U.S. Dist. LEXIS 8164, at *3-4 & n.3 (plaintiff had filed seven previous lawsuits against prison officials); *Brown*, 1995 U.S. Dist. LEXIS 213, at *2 n.1 (plaintiff had seven cases pending in district).

[13]     *See, e.g.*, *Eggersdorf*, 8 F. App'x at 143 (denying leniency to *pro se* civil rights inmate based on fact that at one point plaintiff had **twelve** simultaneously pending lawsuits in Northern District alone); *Gummerson*, 201 F.3d at *2 (denying leniency to *pro se* civil rights inmate based on fact that plaintiff had **twelve** simultaneously pending lawsuits in Northern District alone); *Talbot*, 2005 U.S. Dist. LEXIS 39576, at *18-20 & n.10 (denying leniency to *pro se* civil rights inmate based on fact that plaintiff had filed **twenty** lawsuits in Northern District alone); *Riddick*, 2005 U.S. Dist. LEXIS 5394, at *7 & n.3 (denying leniency to *pro se* civil rights inmate based on fact that plaintiff had filed **twenty** lawsuits in Northern District alone).

[14]     *See, e.g.*, *Santiago*, 91 F. Supp. 2d at 670 (denying leniency to *pro se* civil rights inmate based on fact that at one point plaintiff had **ten** lawsuits pending in Southern District); *Saunders v. Ricks*, 03-CV-0598, 2006 WL 3051792, at *2 & n.11 (N.D.N.Y. Oct. 18, 2006) (Hurd, J., adopting Report-Recommendation of Lowe, M.J.) (denying leniency to *pro se* civil rights inmate who had previously filed **eight** federal court actions or appeals); *McClellan*, 1996 U.S. Dist. LEXIS 8164, at *3-4 & n.3 (denying leniency to *pro se* civil rights inmate based on fact that inmate had filed **seven** previous lawsuits against prison officials); *Brown*, 1995 U.S. Dist. LEXIS 213, at *2 n.1 (denying leniency to *pro se* civil rights inmate based on fact that plaintiff had **seven** lawsuits pending in Western District).

[15]     *See, e.g.*, *McEachin v. Faruki*, 03-CV-1442, 2006 WL 721570, at *2 n.3 (N.D.N.Y. March 20, 2006) (refusing to deny leniency to *pro se* civil rights inmate who had filed **eleven** other federal lawsuits since 2000); *Pritchett v. Portoundo*, 03-CV-0378, 2005 WL 2179398, at *2 n.3 (N.D.N.Y. Sept. 9, 2005) (refusing to deny leniency to *pro se* civil rights

cases is that, in determining whether or not a *pro se* litigant is "experienced," courts often

consider additional factors, such as the quality of the *pro se* litigant's submissions to the Court

(e.g., whether they are typed, cogent, supported by applicable affidavits, exhibits, and/or

memoranda of law, etc),[16] and whether or not the *pro se* litigant has been victorious (or partially

victorious) in any of his previous actions or appeals.[17]

     Here, Plaintiff has filed at least **twelve** other federal or state court actions or

---

inmate who had filed **eight** other federal lawsuits since 1996); *Burke v. Seitz*, 01-CV-1396, 2006 WL 383513, at *2 n.5 (N.D.N.Y. Feb. 13, 2006) (refusing to deny leniency to *pro se* civil rights inmate who had filed **six** other federal lawsuits in previous nine years); *Ariola v. Onondaga County Sheriff's Dept.*, 04-CV-1262, 2007 WL 119453, at *3 (N.D.N.Y. Jan. 10, 2007) (Hurd, J., adopting Report-Recommendation of Lowe, M.J.) (refusing to deny leniency to *pro se* civil rights inmate who had previously filed **five** actions or appeals in federal or state court); *Smith*, 2006 WL 2805242, at *3 & n.4 (refusing to deny leniency to *pro se* civil rights inmate based on his filing of **five** other lawsuits); *Abbas v. Senkowski*, 03-CV-0476, 2005 WL 2179426, at *2 n.4 (N.D.N.Y. Sept. 9, 2005) (continuing to afford special status to *pro se* litigant despite his litigation experience due to his having filed **three** other federal actions since 1997); *Loren v. Feerick*, 97-CV-3975, 1997 WL 441939, at *1 & n.9 (S.D.N.Y. Aug. 6, 1997) (continuing to afford special status to *pro se* litigant despite his litigation experience due to his having filed **three** previous actions in state court regarding current matter, and two previous actions in district court regarding current matter).

    [16]    *See, e.g.*, *Saunders*, 2006 WL 3051792, at *2 (in deciding whether *pro se* plaintiff should be denied special solicitude, considering the fact that, among other things, "with regard to the current action, . . . the motion papers that [p]laintiff has submitted over the past several years have often been fairly good–being typed, being accompanied by affidavits, and containing legal memoranda, exhibits, etc.").

    [17]    *See, e.g., Saudners*, 2006 WL 3051792, at *2 (in deciding whether *pro se* plaintiff should be denied special solicitude, considering the fact that plaintiff had settled two of his previous six federal court actions, receiving $25,000 in exchange for his agreement to voluntarily dismiss the actions, and the fact that some of plaintiff's motions in his many actions have been granted); *Ab v. Sekendur*, 03-CV-4723, 2004 WL 2434220, at *5 (N.D. Ill. Oct. 28, 2004) (considering, during decision of whether *pro se* plaintiff should be denied leniency normally afforded inexperienced *pro se* litigants, fact that "[plaintiff] has successfully applied for and received . . . [a] patent, and as the record in this case indicates, he engaged in lengthy business negotiations with Anoto and various other corporations").

appeals–specifically, at least **three** other federal court actions,[18] at least **three** federal court appeals,[19] at least **four** state court actions,[20] and at least **two** state court appeals.[21]   Plaintiff was victorious or partially victorious in at least **three** of these actions or appeals.[22]   I note that one of these partial victories came in the form of successfully opposing the dismissal of an Eighth Amendment claim for deliberate indifference to a serious medial need upon a motion for summary judgment filed by the defendants in a prisoner civil rights claim.[23]   Perhaps as a result

---

[18]     *See Sledge v. Guest*, 96-CV-0208 (N.D.N.Y.) (civil rights action); *Sledge v. Senkowski*, 97-CV-1049 (N.D.N.Y.) (habeas corpus action); *Sledge v. Kullman*, 03-CV-0052 (N.D.N.Y.) (civil rights action).

[19]     *See Sledge v. Guest*, No. 96-2283, 1996 U.S. App. LEXIS 34429 (2d Cir. Dec. 30, 1996) (civil rights action); *Sledge v. Senkowski*, No. 96-2283 (2d Cir.) (habeas corpus action); *Sledge v. Senkowski*, No. 99-2444 (2d Cir.) (habeas corpus action).

[20]     *See Sledge v. Hesson*, Index No. 000622/1999 (Sup. Ct., Tompkins County) (action for medical malpractice and negligence); *Sledge v. Albany County Med. Ctr.*, Index No. 000979/2001 (Sup. Ct., Albany County) (action for medical malpractice); *Sledge v. Glover*, Index No. 000106/2005 (Sup. Ct., Tompkins County) (matrimonial proceeding); *Sledge v. Glover*, Index No. 401295/2005 (Sup. Ct., New York County) (matrimonial proceeding).

[21]     *See Sledge v. Hesson*, 711 N.Y.S.2d 553 (N.Y. App. Div., 3d Dept., 2000) (action for medical malpractice and negligence); *Sledge v. Hesson*, 737 N.Y.S.2d 561 (N.Y. App. Div., 3d Dept., 2002) (action for medical malpractice and negligence).

[22]     *See Sledge v. Guest*, No. 96-2283, 1996 U.S. App. LEXIS 34429 (2d Cir. Dec. 30, 1996) (during appeal by Plaintiff, vacating and remanding judgment by U.S. District Court for Northern District of New York); *Sledge v. Kullman*, 03-CV-0052, Memorandum-Decision and Order (N.D.N.Y. filed Sept. 29, 2005) (Mordue, J.) (partially denying defendants' motion for summary judgment in light of Plaintiff's opposition to motion, and his objection to magistrate judge's report-recommendation regarding motion); *Sledge v. Hesson*, 711 N.Y.S.2d 553 (N.Y. App. Div., 3d Dept., 2000) (on appeal by Plaintiff, reversing judgment by Supreme Court that dismissed Plaintiff's complaint as time-barred).

[23]     *See Sledge v. Kullman*, 03-CV-0052, Memorandum-Decision and Order (N.D.N.Y. filed Sept. 29, 2005) (Mordue, J.) (partially denying defendants' motion for summary judgment light of Plaintiff's opposition to motion, and his objection to magistrate judge's report-recommendation regarding motion).

of this considerable experience, Plaintiff's papers in the aforementioned actions–as well as the

current action–have been fairly good, often being typed, coherent, and accompanied by affidavits

and memoranda of law, etc.

As a result, I find that the circumstances warrant revoking Plaintiff's special status as a

*pro se* litigant for the remainder of this action.  Again, continuing to afford him such special

status would be unnecessary (and unfairly prejudicial to Defendants).

### C.     Statement of Material Facts

The facts set forth in a movant's Rule 7.1(a)(3) Statement of Material Facts will be taken

as true to the extent those facts are supported by the evidence in the record[24] and are not

specifically controverted by the non-movant.[25]  Once a movant has filed a Rule 7.1 Statement, the

opposing party must file a Rule 7.1 Response.[26]  This Rule 7.1 Response "shall mirror the

movant's [Rule 7.1 Statement] by admitting and/or denying each of the movant's assertions in

matching numbered paragraphs.  Each denial shall set forth a specific citation to the record where

---

[24]     *See Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 243-245
(2d Cir. 2004) ("If the evidence submitted in support of the motion for summary judgment
motion does not meet the movant's burden of production, then summary judgment must be
denied even if no opposing evidentiary matter is presented. . . . [I]n determining whether the
moving party has met this burden . . . , the district court may not rely solely on the statement of
undisputed material facts contained in the moving party's Rule 56.1 statement.  It must be
satisfied that the citation to evidence in the record supports the assertion.") [citation omitted];
*see*, *e.g.*, *Govan v. Campbell*, 289 F. Supp.2d 289, 295 (N.D.N.Y. Oct. 29, 2003) (Sharpe, M.J.)
("In this case, [the plaintiff] did not file a statement of undisputed facts in compliance with Local
Rule 7.1(a)(3).  Consequently, the court will accept the *properly supported* facts contained in the
defendants' 7.1 statement.") [emphasis added].

[25]     *See* N.D.N.Y. L.R. 7.1(a)(3) ("<u>Any facts set forth in the Statement of Material
Facts shall be deemed admitted unless specifically controverted by the opposing party</u>.").

[26]     *See* N.D.N.Y. L.R. 7.1(a)(3).

the factual issue arises."[27]  A district court has no duty to perform an independent review of the record to find proof of a factual dispute.[28]  In the event the district court chooses to conduct such an independent review of the record, any verified complaint filed by the plaintiff should be treated as an affidavit.[29]  (Here, I note that Plaintiff's Amended Complaint is verified.)

However, to be sufficient to create a factual issue, an affidavit (or verified complaint) must, among other things, be based "on personal knowledge."[30]  An affidavit (or verified complaint) is not based on personal knowledge if, for example, it is based on mere "information

---

[27]       (*Id.*)

[28]       *See Amnesty Am. v. Town of West Hartford*, 288 F.3d 467, 470 (2d Cir. 2002) ("We agree with those circuits that have held that Fed. R. Civ. P. 56 does not impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute.") (citations omitted); *accord, Lee v. Alfonso*, No. 04-1921, 2004 U.S. App. LEXIS 21432 (2d Cir. Oct. 14, 2004), *aff'g*, 97-CV-1741, 2004 U.S. Dist. LEXIS 20746, at *12-13 (N.D.N.Y. Feb. 10, 2004) (Scullin, J.) (granting motion for summary judgment); *Fox v. Amtrak*, 04-CV-1144, 2006 U.S. Dist. LEXIS 9147, at *1-4 (N.D.N.Y. Feb. 16, 2006) (McAvoy, J.) (granting motion for summary judgment); *Govan v. Campbell*, 289 F. Supp.2d 289, 295 (N.D.N.Y. Oct. 29, 2003) (Sharpe, M.J.) (granting motion for summary judgment); *Prestopnik v. Whelan*, 253 F. Supp.2d 369, 371-372 (N.D.N.Y. 2003) (Hurd, J.).

[29]       *See Patterson v. County of Oneida*, 375 F.3d 206, 219 (2d. Cir. 2004) ("[A] verified pleading . . . has the effect of an affidavit and may be relied upon to oppose summary judgment."); *Fitzgerald v. Henderson*, 251 F.3d 345, 361 (2d Cir. 2001) (holding that plaintiff "was entitled to rely on [his verified amended complaint] in opposing summary judgment"), *cert. denied*, 536 U.S. 922 (2002); *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1993) ("A verified complaint is to be treated as an affidavit for summary judgment purposes.") [citations omitted].

[30]       Fed. R. Civ. P. 56(e) ("Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to the matters stated therein."); *see also U.S. v. Private Sanitation Indus. Ass'n of Nassau/Suffolk, Inc.*, 44 F.3d 1082, 1084 (2d Cir. 1995) [citations omitted], *cert. denied sub nom, Ferrante v. U.S.*, 516 U.S. 806 (1995).

and belief" or hearsay.[31]  In addition, such an affidavit (or verified complaint) must not be

conclusory.[32]  An affidavit (or verified complaint) is conclusory if, for example, its assertions

lack any supporting evidence or are too general.[33]  Moreover, "[a]n affidavit must not present

---

[31]     *See Patterson*, 375 F.3d at 219 ("[Rule 56(e)'s] requirement that affidavits be
made on personal knowledge is not satisfied by assertions made 'on information and belief.'. . .
[Furthermore, the Rule's] requirement that the affiant have personal knowledge and be
competent to testify to the matters asserted in the affidavits also means that the affidavit's
hearsay assertion that would not be admissible at trial if testified to by the affiant is insufficient
to create a genuine issue for trial."); *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 643 (2d
Cir. 1988) ("[Defendant's] affidavit states that it is based on personal knowledge *or* upon
information and belief . . . .  Because there is no way to ascertain which portions of [Defendant's]
affidavit were based on personal knowledge, as opposed to information and belief, the affidavit is
insufficient under Rule 56 to support the motion for summary judgment."); *Applegate v. Top
Assoc., Inc.*, 425 F.2d 92, 97 (2d Cir. 1970) (rejecting affidavit made on "suspicion . . . rumor
and hearsay"); *Spence v. Maryland Cas. Co.*, 803 F. Supp. 649, 664 (W.D.N.Y. 1992) (rejecting
affidavit made on "secondhand information and hearsay"), *aff'd*, 995 F. 2d 1147 (2d Cir. 1993).

[32]     *See* Fed. R. Civ. P. 56(e) (requiring that non-movant "set forth specific facts
showing that there is a genuine issue for trial"); *Patterson*, 375 F.3d at 219 (2d. Cir. 2004) ("Nor
is a genuine issue created merely by the presentation of assertions [in an affidavit] that are
conclusory.") [citations omitted]; *Applegate*, 425 F.2d at 97 (stating that the purpose of Rule
56[e] is to "prevent the exchange of affidavits on a motion for summary judgment from
degenerating into mere elaboration of conclusory pleadings").

[33]     *See, e.g.*, *Bickerstaff v. Vassar Oil*, 196 F.3d 435, 452 (2d Cir. 1998) (McAvoy,
C.J., sitting by designation) ("Statements [for example, those made in affidavits, deposition
testimony or trial testimony] that are devoid of any specifics, but replete with conclusions, are
insufficient to defeat a properly supported motion for summary judgment.") [citations omitted];
*West-Fair Elec. Contractors v. Aetna Cas. & Sur.*, 78 F.3d 61, 63 (2d Cir. 1996) (rejecting
affidavit's conclusory statements that, in essence, asserted merely that there was a dispute
between the parties over the amount owed to the plaintiff under a contract); *Meiri v. Dacon*, 759
F.2d 989, 997 (2d Cir. 1985) (plaintiff's allegation that she "heard disparaging remarks about
Jews, but, of course, don't ask me to pinpoint people, times or places. . . .  It's all around us" was
conclusory and thus insufficient to satisfy the requirements of Rule 56[e]), *cert. denied*, 474 U.S.
829 (1985); *Applegate*, 425 F.2d at 97 ("[Plaintiff] has provided the court [through his affidavit]
with the characters and plot line for a novel of intrigue rather than the concrete particulars which
would entitle him to a trial.").

legal arguments."[34]

Finally, even where an affidavit (or verified complaint) is based on personal knowledge and is nonconclusory, it may be insufficient to create a factual issue where it is (1) "largely unsubstantiated by any other direct evidence" and (2) "so replete with inconsistencies and improbabilities that no reasonable juror would undertake the suspension of disbelief necessary to credit the allegations made in the complaint."[35]

Here, I note that Defendant has filed a proper Rule 7.1 Statement (whose factual assertions are adequately supported by citations to the record),[36] and Plaintiff has failed to file a

---

[34]     N.D.N.Y. L.R. 7.1(a)(2).

[35]     *See, e.g.*, *Jeffreys v. City of New York*, 426 F.3d 549, 554-555 (2d Cir. 2005) (affirming grant of summary judgment to defendants in part because plaintiff's testimony about an alleged assault by police officers was "largely unsubstantiated by any other direct evidence" and was "so replete with inconsistencies and improbabilities that no reasonable juror would undertake the suspension of disbelief necessary to credit the allegations made in the complaint") [citations and internal quotations omitted]; *Argus, Inc. v. Eastman Kodak Co.*, 801 F.2d 38, 45 (2d Cir. 1986) (affirming grant of summary judgment to defendants in part because plaintiffs' deposition testimony regarding an alleged defect in a camera product line was, although specific, "unsupported by documentary or other concrete evidence" and thus "simply not enough to create a genuine issue of fact in light of the evidence to the contrary"); *Allah v. Greiner*, 03-CV-3789, 2006 WL 357824, at *3-4 & n.7, 14, 16, 21 (S.D.N.Y. Feb. 15, 2006) (prisoner's verified complaint, which recounted specific statements by defendants that they were violating his rights, was conclusory and discredited by the evidence, and therefore insufficient to create issue of fact with regard to all but one of prisoner's claims, although verified complaint was sufficient to create issue of fact with regard to prisoner's claim of retaliation against one defendant because retaliatory act occurred on same day as plaintiff's grievance against that defendant, whose testimony was internally inconsistent and in conflict with other evidence); *Olle v. Columbia Univ.*, 332 F. Supp.2d 599, 612 (S.D.N.Y. 2004) (plaintiff's deposition testimony was insufficient evidence to oppose defendants' motion for summary judgment where that testimony recounted specific allegedly sexist remarks that "were either unsupported by admissible evidence or benign"), *aff'd*, 136 Fed. App'x 383 (2d Cir. 2005) (unreported decision).

[36]     (Dkt. No. 43, Part 2 [Def.'s Rule 7.1 Statement].)

proper Rule 7.1 Response.[37]  Under the circumstances of this case (which I have described

above), I decline to perform an independent review of the record to find proof of a factual

dispute.

## III.    ANALYSIS

### A.    Whether the Eleventh Amendment Bars Plaintiff's Claim Against Defendant in His Official Capacity

Defendant argues that Plaintiff's claims against Defendant in his official capacity must be

dismissed because the Eleventh Amendment immunizes state employees, such as Defendant,

from liability incurred while acting in their official capacity.  (Dkt. No. 28, Part 2, at 3 [Def.'s

Mem. of Law].)  Plaintiff does not oppose this argument, and indeed concedes the validity of this

argument.  (Dkt. No. 34, at 19 [Plf.'s "Opposition"].)

"Where a properly filed motion is unopposed and the Court determines that the moving

party has met its burden to demonstrate entitlement to the relief requested therein, the non-

moving party's failure to file or serve any papers as required by this Rule shall be deemed as

consent to the granting or denial of the motion, as the case may be, unless good cause be shown."

N.D.N.Y. L.R. 7.1(b)(3).  Among the "papers" required to be filed and served by Plaintiff in

response to Defendant's motion is a memorandum of law.[38]  Because Plaintiff has, in his

---

[37]    (Dkt. No. 34 [Plf.'s Opposition Papers, which do not include a Rule 7.1 Response admitting and/or denying each of Defendant's factual assertions in matching numbered paragraphs, and which do not even contain citations to the record where any alleged factual issues arise, with a few exceptions].)

[38]    N.D.N.Y. L.R. 7.1(a) (requiring opposition to motion for summary judgment to contain, *inter alia*, a memorandum of law); *cf*. Fed. R. Civ. P. 56(e) ("When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's *response* . . . must set forth specific facts showing that there is a genuine issue for trial.  If the

memorandum of law, failed to oppose Defendant's argument (and indeed has conceded the validity of that argument), Plaintiff has "consented" to Defendant's argument.[39]

Because Plaintiff has "consented" to Defendant's argument, the only remaining issue is whether Defendant has met his burden "to demonstrate entitlement to the relief requested" through that argument.  A review of whether a movant has met his burden "to demonstrate entitlement" to dismissal under Local Rule 7.1(b)(3) is a more limited endeavor than a review of a contested motion for dismissal.[40]  With this lightened burden of persuasion in mind, I find that Defendant's argument is, at the very least, facially meritorious.

_____

adverse party does not so *respond*, summary judgment, if appropriate, shall be entered against the adverse party.") [emphasis added].

[39]      *See Beers v. GMC*, 97-CV-0482, 1999 U.S. Dist. LEXIS 12285, at *27-31 (N.D.N.Y. March 17, 1999) (McCurn, J.) (deeming plaintiff's failure, in his opposition papers, to oppose several arguments by defendants in their motion for summary judgment as consent by plaintiff to the granting of summary judgment for defendants with regard to the claims that the arguments regarded, under Local Rule 7.1[b][3]); N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein, the non-moving party's failure to file or serve any papers as this Rule requires shall be deemed as consent to the granting or denial of the motion, as the case may be, unless good cause is shown.").

[40]      *See, e.g.*, *Hernandez v. Nash*, 00-CV-1564, 2003 U.S. Dist. LEXIS 16258, *7-8 (N.D.N.Y. Sept. 10, 2003) (Sharpe, M.J.) (before an unopposed motion to dismiss may be granted under Local Rule 7.1[b][3], "the court must review the motion to determine whether it is *facially meritorious*") (emphasis added) (citations omitted); *Race Safe Sys. v. Indy Racing League*, 251 F. Supp.2d 1106, 1109-1110 (N.D.N.Y. 2003) (reviewing whether record contradicted defendant's arguments, and whether record supported plaintiff's claims, in deciding unopposed motion to dismiss, under Local Rule 7.1[b][3]); *see also Wilmer v. Torian*, No. 96-CV-1269, 1997 U.S. Dist. LEXIS 16345, *2 (N.D.N.Y. Aug. 29, 1997) (Hurd, M.J.) (applying prior version of Rule 7.1[b][3], but recommending dismissal because of plaintiff's failure to respond to motion to dismiss *and* the reasons set forth in defendants' motion papers)*, adopted by* 1997 U.S. Dist. LEXIS 16340, *2 (N.D.N.Y. Oct. 14, 1997) (Pooler, J.); *accord*, *Carter v. Superintendent Montello*, No. 95-CV-989, 1996 U.S. Dist. LEXIS 15072, *3 (N.D.N.Y. Aug. 27, 1996) (Hurd, M.J.), *adopted by* 983 F. Supp. 595 (N.D.N.Y. 1996) (Pooler, J.).

As a result, I recommend that Plaintiff's claims against Defendant in his official capacity be dismissed for failure to state a claim under Rule 12(b)(6).

**B.    Whether Plaintiff Has Failed to Establish (or Even State) a First Amendment Claim**

Defendant argues that Plaintiff's First Amendment claim must be dismissed because Plaintiff has failed to establish, or even allege facts indicating, the occurrence of a First Amendment violation by Defendant.  (Dkt. No. 28, Part 2, at 7-9 [Def.'s Mem. of Law].)  Plaintiff does not oppose this argument.  (*See generally* Dkt. No. 34, at 8-20 [Plf.'s "Opposition"].)

As stated above in Part III.A. of this Report-Recommendation, by failing to oppose Defendant's argument, Plaintiff has "consented" to that argument under Local Rule of Practice 7.1(b)(3).  Thus,  the only remaining issue is whether Defendant has met his burden "to demonstrate entitlement to the relief requested" through that argument.  Under the circumstances, I find that Defendant has met this lightened burden.

For example, I agree with Defendant that Plaintiff does not, in his Second Amended Complaint, allege any facts indicating that the "protected conduct" in which he engaged on March 16, 2004 (i.e., the act of filing a grievance against Defendant), was a "substantial or motivating factor" in Defendant's decision to subsequently "not approv[e] medications already approved [by another physician]." (Dkt. No. 15, ¶¶ 15, 24 [Plf.'s Second Am. Compl.].)  I note that Plaintiff alleges that Defendant failed or refused to "approv[e]" such medications even *before* Plaintiff filed his grievance.  (*Id*. at ¶¶ 7-18, 20-24.)

As a result, I recommend that Plaintiff's retaliation claim under the First Amendment be

dismissed for failure to state a claim under Rule 12(b)(6) and, in the alternative, for failure to

adduce any evidence in support of that claim under Rule 56.

### C.      Whether Plaintiff Has Failed to Establish (or Even State) an Eighth Amendment Claim

Defendant recites the correct legal standard that governs Plaintiff's claim of inadequate

medical care under the Eighth Amendment.  (Dkt. No. 28, Part 2, at 3-6 [Def.'s Mem. of Law].)

Generally, to prevail on such a claim, Plaintiff must show two things: (1) that he had a

sufficiently serious medical need; and (2) that Defendant was deliberately indifferent to that

serious medical need.  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Chance v. Armstrong*, 143

F.3d 698, 702 (2d Cir. 1998).

I will assume, for the sake of argument, that, taken together, Plaintiff's various physical

ailments constituted a "serious medical need" for purposes of the Eighth Amendment.[41]  The

problem is that Plaintiff has alleged no facts indicating that Defendant was *deliberately*

*indifferent* to that need; and, if he had alleged such facts, he has adduced no evidence in support

---

[41]      I note that I do not make such an assumption easily, in light of the cases finding
that similar conditions are not sufficiently serious for purposes of the Eighth Amendment.  *See*,
*e.g.*, *Salaam v. Adams*, 93-CV-0517, 2006 WL 2827687, at *10 (N.D.N.Y. Sept. 26, 2006)
(Kahn, J., adopting Report-Recommendation of Lowe, M.J.) (prisoner's back and stomach pains
did not constitute a sufficiently "serious medical need" for purposes of Eighth Amendment);
*Samuels v. Jackson*, 97-CV-2420, 1999 WL 92617, at *1-3 (S.D.N.Y. Feb. 22, 1999) (prisoner's
"[p]apules, vesicles, pustules, burrows, and intense itching resulting in eczema" did not
constitute a sufficiently "serious medical need" for purposes of Eighth Amendment); *Scott v.
DelSignore*, 02-CV-0029, 2005 U.S. Dist. LEXIS 6070, at *25-27 (W.D.N.Y. Feb. 18, 2005)
(asthma condition not serious medical need under circumstances); *Patterson v. Lilley*, 02-CV-
6056, 2003 U.S. Dist. LEXIS 11097, at *12-13 (S.D.N.Y. June 30, 2003) (asthma condition not
serious medical need under circumstances); *Sulkowska v. City of New York*, 129 F. Supp.2d 274,
292-293 (S.D.N.Y. 2001) (asthma condition not serious medical need under circumstances);
*Reyes v. Corrections Officer Bay*, 97-CV-6419, 1999 U.S. Dist. LEXIS 13404, at *5 (S.D.N.Y.
Sept. 1, 1999) (asthma condition not serious medical need under circumstances).

of such facts.  At most, the factual allegations indicate, and the uncontroverted record evidence

establishes, the existence of only a difference of opinion between Plaintiff and Defendant, or

*conceivably* a hint of negligence on the part of Defendant.  However, even if true, such a

difference of opinion, or such negligence, would not be enough to render Defendant liable to

Plaintiff under the Eighth Amendment.[42]  For example, "[d]isagreements over medications . . .

are not adequate grounds for a section 1983 claim."[43]  This is especially true in light of (1) the

nature of the medications alleged in the current case,[44] (2) the extent to which Plaintiff was

---

[42]    *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998) ("It is well-established that mere disagreement over the proper treatment does not create a constitutional claim.  So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation."); *Hemmings v. Gorczyk*, 134 F.3d 104, 108 (2d Cir. 1998) ("The required state of mind [under the Eighth Amendment is] equivalent to criminal recklessness [not negligence] . . . .").

[43]    *Sonds v. St. Barnabus Hosp. Corr. Health. Servs.*, 151 F. Supp.2d 303, 312 (S.D.N.Y. 2001); *see also Veloz v. New York*, 339 F. Supp. 2d 505, 522-24 (S.D.N.Y. 2004) (granting defendants' motion for summary judgment on plaintiff's claim for deliberate indifference because defendants denied plaintiff's request for a stronger pain medication to treat his back condition based on a mere disagreement as to treatment, and medical malpractice is not actionable under the Eighth Amendment); *Connors v. Heywright*, 02-CV-9988, 2003 WL 21087886, at *3 (S.D.N.Y. May 12, 2002) (granting defendants' motion to dismiss because plaintiff's allegations that defendants forgot to give him his medications, altered his medications, and did not give him his monthly examinations, despite his epileptic seizures, failed to state a claim for deliberate indifference but stated a claim only for negligence).

[44]    For example, I note that one of the medications at issue was an over-the-counter body lotion.  (Dkt. No. 15, ¶ 9 [Plf.'s Second Am. Compl., alleging that Defendant told Plaintiff that he would write a "prescription" for "Keri Lotion," which is a well-known brand of body lotion that is available without a prescription]; Dkt. No. 28, Part 2, ¶ 8 [Def.'s Rule 7.1 Statement, asserting that "Keri lotion is a therapeutic over-the-counter dry skin lotion."].)

allegedly denied these medications during the relevant time period,[45] and (3) the extent to which

Plaintiff's health condition was monitored during the relevant time period.[46]  As the Second

Circuit has explained,

> It must be remembered that the State is not constitutionally obligated,
> much as it may be desired by inmates, to construct a perfect plan for
> [medical] care that exceeds what the average reasonable person would
> expect or avail herself of in life outside the prison walls.  [A]
> correctional facility is not a health spa, but a prison in which convicted
> felons are incarcerated.  Common experience indicates that the great
> majority of prisoners would not in freedom or on parole enjoy the
> excellence in [medical] care which plaintiff[] understandably seeks
> . . . .  We are governed by the principle that the objective is not to
> impose upon a state prison a model system of [medical] care beyond
> average needs but to provide the minimum level of [medical] care
> required by the Constitution. . . .  The Constitution does not command
> that inmates be given the kind of medical attention that judges would
> wish to have for themselves . . . .  The essential test is one of medical
> necessity and not one simply of desirability.

*Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986) [internal quotations and citations omitted].

As a result, I recommend that Plaintiff's inadequate-medical-care claim under the Eighth

---

[45]     I note that, as described above in Part I.A. of this Report-Recommendation,
Plaintiff acknowledges that, during much or all of this time period, he was in possession of
various medications for his referenced medical conditions, which medications were either left
over from a previous prescription (e.g., Loratadine for "asthma/allergy symptoms," either
"Naprosyn" or "Naproxen" for back pain, a "Ph cleanser" for a "skin condition") or were
"illegally obtain[ed] [by Plaintiff] . . . from other inmates with similar medical problems."  (Dkt.
No. 15, ¶¶ 3-14, 16, 18, 23 [Plf.'s Second Am. Compl.].)  I also note that, to the extent that
Plaintiff is alleging that he was deprived of any lotion for dry skin for a period of three months,
such an allegation fails to state a claim as a matter of law.  *See Peterson v. Scully*, 707 F. Supp.
759, 761 (S.D.N.Y. 1989) ("[A] three-month delay in receiving lotion for dry skin cannot provide
the basis for a § 1983 claim.").

[46]     Plaintiff acknowledges that, during this time period, he was seen by various
medical care professionals (including Defendant) on several occasions (e.g., on October 21,
2003, October 27, 2003, October 31, 2003, November 6, 2003, November 13, 2003, February 9,
2004, and March 15, 2004).  (*Id.*)

Amendment be dismissed for failure to state a claim under Rule 12(b)(6) and, in the alternative,

for failure to adduce any evidence in support of that claim under Rule 56.

**D.    Whether Plaintiff Has Failed to Establish (or Even State) a Fourteenth Amendment Claim**

Defendant argues that Plaintiff's Fourteenth Amendment claim must be dismissed because Plaintiff has failed to establish, or even allege facts indicating, the occurrence of a Fourteenth Amendment violation by Defendant.  (Dkt. No. 28, Part 2, at 11 [Def.'s Mem. of Law].)  Plaintiff does not oppose this argument.  (*See generally* Dkt. No. 34, at 8-20 [Plf.'s "Opposition"].)

As stated above in Part III.A. of this Report-Recommendation, by failing to oppose Defendant's argument, Plaintiff has "consented" to that argument under Local Rule of Practice 7.1(b)(3).  Thus, the only remaining issue is whether Defendant has met his burden "to demonstrate entitlement to the relief requested" through that argument.  Under the circumstances, I find that Defendant has met this lightened burden.  For example, I agree with Defendant that Plaintiff did not possess a "protected liberty interest" in "address[ing] his medical concerns" in conversations with Defendant.  (Dkt. No. 15, ¶¶ 3, 13, 15, 20, 24 [Plf.'s Second Am. Compl.].)

As a result, I recommend that Plaintiff's due process claim under the Fourteenth Amendment be dismissed for failure to state a claim under Rule 12(b)(6) and, in the alternative, for failure to adduce any evidence in support of that claim under Rule 56.

**E.    Whether Plaintiff's Claims Should Be Dismissed Because Defendant Was Not Personally Involved in the Constitutional Violations Alleged**

Because I have concluded that adequate grounds exist warranting dismissal of Plaintiff's Second Amended Complaint, I need not address Defendant's alternative argument that Plaintiff's claims should be dismissed because he has neither alleged facts indicating nor adduced evidence establishing that Defendant was personally involved in the constitutional violations alleged.  As a

result, I do not address Defendant's alternative argument except to make the following
observation.

Plaintiff's argument that Defendant was personally involved in the constitutional
violations alleged starts with, and largely hinges on, his argument that Defendant "prescribed
various medications for plaintiff." (Dkt. No. 34, at 20 [Plf.'s "Opposition"].) This argument is
generally consistent with the allegations of Plaintiff's Second Amended Complaint, which
assume (without any stated reason) that Defendant actually wrote the "prescriptions" that he
allegedly told Plaintiff on November 6, 2003, that he would write.[47] The problem with Plaintiff's
argument is that it is not supported by any record citations,[48] and indeed is flatly contradicted by
Defendant's Rule 7.1 Statement,[49] which Plaintiff has failed to properly oppose.[50]

As a result, the success of Plaintiff's theory of supervisory liability depends on his
argument that (1) Defendant learned of the alleged fact that Plaintiff was not receiving the
medications that he had previously been prescribed (apparently by a physician at Upstate C.F.),

---

[47]    I have placed the word *prescriptions* in quotation marks because Plaintiff's
allegations appear to exhibit a misunderstanding of what Defendant allegedly told him on
November 6, 2003. (*See, e.g.*, Dkt. No. 15, ¶ 9 [Plf.'s Second Am. Compl., alleging that
Defendant told Plaintiff that he would write a "prescription" for "Keri Lotion," which is a well-
known brand of body lotion that is available without a prescription]; *see also* Dkt. No. 28, Part 2,
¶ 8 [Def.'s Rule 7.1 Statement, asserting that "Keri lotion is a therapeutic over-the-counter dry
skin lotion."].)

[48]    (Dkt. No. 34, at 20 [Plf.'s "Opposition"].)

[49]    (Dkt. No. 28, Part 2, ¶ 8 [Def.'s Rule 7.1 Statement, asserting, "All medications
prescribed to the plaintiff during the relevant times after his arrival at Auburn C.F. on October
21, 2003 were prescribed by Physician Assistant Laux and not by Dr. Kooi."].)

[50]    (*See generally* Dkt. No. 34 [Plf.'s "Opposition," containing no Rule 7.1
Response].)

and (2) Defendant failed to remedy the violation after learning of it.  Even assuming for the sake

of argument that Defendant learned of the aforementioned fact, common sense dictates that

before Defendant can be found to have "failed" to remedy the violation, he must have had a

"duty" to remedy the violation.  Plaintiff argues that Defendant had such a duty due to his

position as the supervisor of the person who had written Plaintiff's prescriptions–Auburn C.F.

Physician Assistant Richard Laux.[51]  However, Plaintiff does not allege any facts indicating, or

adduce any evidence establishing, that Defendant, due to his role as supervisor of P.A. Laux,

possessed control over the operation of the pharmacy at Auburn C.F.[52]

> **F.      Whether Plaintiff's Claims Should Be Dismissed Because Defendant Is Protected by the Doctrine of Qualified Immunity**

Again, because I have concluded that adequate grounds exist warranting dismissal of

Plaintiff's Amended Complaint, I need not, and do not, address Defendant's alternative argument

that Plaintiff's claims should be dismissed because, as a matter of law, Defendant is protected by

the doctrine of qualified immunity.

**ACCORDINGLY**, it is

**RECOMMENDED** that Defendant's motion for summary judgment (Dkt. No. 28) be

**GRANTED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten days

within which to file written objections to the foregoing report.  Such objections shall be filed

with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN**

---

[51]      (Dkt. No. 34, at 20 [Plf.'s "Opposition"].)

[52]      (Dkt. No. 34, at 20 [Plf.'s "Opposition"].)

**DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d

Cir. 1993) (citing *Small v. Sec'y of Health and Human Svcs.*, 892 F.2d 15 [2d Cir. 1989]); 28

U.S.C. § 636(b); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: February 12, 2007
      Syracuse, New York

George H. Lowe
United States Magistrate Judge